# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:10cv264

| | | |
|---|---|---|
| MAX BAILEY; MARGARET DALTON; CARLTON BILL HUNTLEY; K.C., by his guardian *ad litem* Robert C. Carpenter, Esq.; A.D., by her guardian *ad litem* James W. Kilbourne, Jr., Esq., ; and STEVE MARLOWE, | ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| Vs. | ) ) | MEMORANDUM AND RECOMMENDATION |
| POLK COUNTY, NORTH CAROLINA; POLK COUNTY SHERIFF'S DEPARTMENT; MATT PRINCE; TRENT CARSWELL; CHRIS ABRIL; CHARLES GRADY SHEHAN; UNKNOWN POLICE OFFICERS; and OTHER UNKNOWN STATE AND FEDERAL LAW ENFORCEMENT AGENCIES, | ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |
| _____ | ) | |

THIS MATTER is before the court upon Polk County's, Polk County Sheriff's

Department's, Matt Prince's, Trent Carswell's, and Chris Abril's[1] Partial Motion to

Dismiss Complaint (#21). Having carefully considered the county defendants'

_____

[1] Collectively, these defendants will be referred to as the county defendants or defendants. Grady Shehan, a private individual, has been served (#17) but has neither appeared nor been defaulted.

motion, plaintiffs' response, and defendants' reply, as well as the Complaint, the court enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

### I.    Nature of the Action

This is an action brought against county law enforcement officers for alleged constitutional violations which occurred during a warrant-based search of property at which plaintiffs either resided, owned, or were found on the evening of the search. They allege that their arrests, detentions, and the search of their homes pursuant to a search warrant were unconstitutional. Plaintiffs bring federal causes of action under 42, United States Code, Section 1983 against the county officers, county, and sheriff's office, and assert civil conspiracy claims under Section 1985 against the officers and the private individual defendant, an alleged informant. In addition, plaintiffs assert a number of supplemental state law claims. As discussed more thoroughly below, plaintiffs base much of this civil action on the state court's suppression of evidence and statements made by the presiding Superior Court Judge in the underlying criminal case. The county defendants have moved for partial dismissal, contending that plaintiffs have failed to state cognizable claims against them in most, but not all, of the eleven causes of action asserted. Defendants do not seek dismissal of the

individual capacity claims asserted against Defendant Carswell by Plaintiff Huntley in the first, sixth, seventh, eighth, and ninth claims for relief.

## II.    Factual Background

The court has accepted the factual allegations of the Complaint as true for the limited purpose of considering the county defendants' Partial Motion to Dismiss. Plaintiffs allege that on November 13, 2007, the Polk County Sheriff's Office and other state and federal agencies executed a state search warrant on four properties in Polk County. Complaint, ¶ 20.  Plaintiff Bailey owned two of the properties searched, Plaintiff Marlowe owned one, and a non-party owned the other.  Complaint, ¶ 21.

Defendant Prince, a Polk County Deputy Sheriff, prepared the proposed search warrant and the affidavit in support, which was based on information received from an informant, Defendant Shehan.  Complaint, ¶ 43.  In his affidavit, Defendant Prince averred that he had received information from Defendant Shehan  that Plaintiffs Marlowe and Bailey were engaged in a massive criminal conspiracy to manufacture, package, store, and sell large amounts of marijuana.  Complaint, ¶ 43.  The affiant reflected that Shehan had stated that there were pounds of marijuana and thousands of dollars in cash at Bailey's residence, and several grow rooms filled with six-foot high marijuana plants in Plaintiff Marlowe's residence.  Complaint, ¶ 44.

When the search warrant was executed on one of Plaintiff Bailey's properties,

the police believed that Plaintiff Huntley, who was renting the trailer from Plaintiff Bailey, was a trespasser. Complaint, ¶¶ 22-24. The officers threw Plaintiff Huntley to the ground, forcibly cuffed him, and opened a gash on his arm. Complaint, ¶¶ 25-28. Defendant Carswell, a Polk County Deputy, then picked Huntley up by the handcuffs and tossed him to the ground outside the trailer. Complaint, ¶ 30. The charges against Plaintiff Huntley were dismissed by the District Attorney. Complaint, ¶ 34.

During the search, the officers destroyed the ceiling of the trailer, Plaintiff Huntley's television set, and when they could not find anything illegal, they planted several crack pipes as well as marijuana inside the trailer. Complaint, ¶¶ 31-34). Plaintiff Bailey arrived at his property when the officers were leaving the trailer and were gathering around a two-story out-building on his property, which housed Plaintiff Bailey's wood shop. Complaint, ¶¶ 35-36. The officers pointed guns at Plaintiff Bailey, handcuffed him, and placed him in a patrol car. Complaint, ¶ 37. During the search of the out-building, the officers busted down the downstairs door and the upstairs door. Complaint, ¶¶ 38-39.

Plaintiff Bailey informed the officers that Plaintiffs Dalton, K.C., and A.D. were at his residence. Complaint, ¶ 40. The officers (who are not identified in the Complaint) entered Plaintiff Bailey's residence with guns drawn, and ordered

Plaintiffs Dalton, K.C., and A.D. to the ground while they searched the home. Complaint, ¶ 42. No evidence of criminal activity or cash were found on this property. Complaint, ¶ 50.

A search was also conducted of Plaintiff Marlowe's residence. The search of this home yielded approximately 60 live marijuana plants, no taller than 18 inches. Complaint, ¶ 45. While Plaintiff Marlowe did maintain an indoor marijuana growing operation, it was not in plain view, but hidden behind false walls. Complaint, ¶ 46. Plaintiff Marlowe was charged with manufacturing marijuana, maintaining a dwelling to distribute marijuana, and possession of drug paraphernalia.

At a subsequent hearing in Polk County Superior Court, Judge Marlene Hyatt found that Defendant Shehan's affidavit[2] was false, and that the Sheriff's Department used false statements, either knowingly or with reckless disregard for the truth to obtain the issuance of the search warrant. Complaint, ¶ 48. After Judge Hyatt suppressed the evidence, the District Attorney's Office dismissed all the charges against Plaintiff Marlowe. Complaint, ¶ 49.

_____

[2] The court has attempted to reflect plaintiff's allegations. While the court does not now have a transcript of Judge Hyatt's decision, the court must note that the only affidavit presented in support of the search warrant application was the affidavit of Defendant Prince. Defendant Shehan was not referenced in such affidavit as having provided an affidavit or declaration made under the penalty of perjury, but as having provided information to Defendant Prince as a "confidential reliable informant." See (#21-1). Thus, the statement in paragraph 48 of the Complaint that Defendant Shehan provided a false affidavit is erroneous and incompatible with a allegation in paragraph 43 of the Complaint that the only affiant was Defendant Prince.

### III. Plaintiffs' Claims

Having first summarized plaintiffs' factual allegations, the court has next considered the claims asserted by plaintiffs in their Complaint;

(1)     a Section1983 false arrest claim under the Fourth, Fifth, and Fourteenth Amendments against all defendants;

(2)     a Section1983 detention and confinement claim under the Fifth and Fourteenth Amendments against all defendants;

(3)     a Section 1983 unreasonable search claim against all defendants;

(4)     a Section 1983/1985 conspiracy claim under the Fifth and Fourteenth Amendments against all defendants;

(5)     a Section 1983 claim based on refusing or neglecting to prevent harm under the Fifth and Fourteenth Amendments against Defendant Abril, then the Sheriff of Polk County, and the Defendant Sheriff's Department;

(6)     a supplemental state law claim for false arrest and imprisonment against all defendants;

(7)     a supplemental state law claim for assault against the Defendants Sheriff's Department, Carswell, and Abril;

(8)     a supplemental state law claim for battery against the Defendants

Sheriff's Department, Carswell, and Abril;

(9)   a supplemental state law claim for intentional infliction of emotional distress against all defendants;

(10)   a supplemental state law claim for property damage against all defendants; and

(11)   a Section 1983 claim for "Liability for Constitutional Violations" against Polk County.

The county defendants have moved for partial dismissal of most of these claims under Rule 12(b)(6).

## IV.   Applicable Standard

Review of the plaintiffs' response to the Partial Motion to Dismiss reveals that plaintiffs have proposed a standard of review that was abrogated by the Supreme Court nearly four years ago.  Until 2007, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiffs could prove no set of facts which would support their claim and entitle it to relief. Neitzke v. Williams, 490 U.S. 319 (1989);  Conley v. Gibson, 355 U.S. 41 (1957).  This "no set of facts" standard has been specifically abrogated by the Supreme Court; however, plaintiffs have repeatedly relied on such  former standard in their opposition to the Partial Motion to Dismiss.    Plaintiffs even cite precedent from another circuit in support of their

argument:

> Plaintiffs anticipate that through discovery, they will learn, among the other constitutional violations, which officers threw Mr. Bailey into the back of the police car, which officers burst into Ms. Dalton's kitchen, and which officers aimed guns at the children's heads. The complaint is not frivolous and provides more than enough facts to allow the Defendants to frame their answer, which is the standard the Court should use to determine the sufficiency of the complaint. District *Council* 47, 795 F.2d at 313.

Response (#22), at 5 (citing District Council 47, American Federation of State, County and Mun. Employees, AFL-CIO by Cronin v. Bradley, 795 F.2d 310 (3d Cir. 1986), *abrogation recognized by* Loftus v. Southeastern Pennsylvania Transp. Authority, 843 F.Supp. 981(E.D.Pa. 1994)).   Plaintiffs go on to argue as follows:

> Defendants also reiterate their assertion that the complaint fails to specify which Defendants committed which violations, and accordingly, Plaintiffs reiterate their argument that these matters will [be] established through discovery.

Id., at 7.  The "who did what to whom" is not a mere afterthought as plaintiffs' argument suggests, but is, rather, essential to alleging causes of action that can survive Rule 12(b)(6) scrutiny.  No longer may a plaintiff simply bring a claim against a defendant without both knowing and explaining the wrongful conduct that warrants haling that defendant into court to answer such charge.  Indeed, the Court recognized that it is impossible to answer or defend against a charge where the defendant does not provide notice of the conduct plaintiff contends was unlawful or harmful, as discussed

below.

First, in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Court held that the "no set of facts" standard first espoused in <u>Conley</u>, <u>supra</u>, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." <u>Id.</u>, at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." <u>Id.</u>, at 561 (alteration in original). This "later establishment" of some set of yet-to-be disclosed facts is precisely the improper peg upon which plaintiffs have hung their hats.

After the decision in <u>Twombly</u>, to survive a Rule 12(b)(6) motion to dismiss, plaintiffs must allege facts in their complaint that "raise a right to relief above the speculative level." <u>Id.</u>, at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

<u>Id.</u> (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." <u>Id.</u>, at 557. Instead, plaintiffs must now plead sufficient facts

to state a claim for relief that is "*plausible* on its face." <u>Id.</u>, at 570 (emphasis added).

While the Court was clear in <u>Twombly</u> that <u>Conley</u> was no longer controlling, see <u>Twombly</u>, 550 U.S. at 563, and <u>Felman Production Inc. v. Bannai</u>, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it revisited the Rule 12(b)(6) pleading standard in <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In <u>Iqbal</u>, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." <u>Id.</u>, S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" <u>Id.</u> (citing <u>Twombly</u>, <u>supra</u>; emphasis added). The Court goes on to define precisely what is "plausible":

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

<u>Id.</u> This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> Thus, a complaint falls short of the plausibility standard where plaintiffs plead "facts that are 'merely consistent with' a defendant's liability . . . ." <u>Id.</u> While the court accepts <u>plausible</u> factual allegations made in a complaint as true and considers those facts in the light most favorable to plaintiffs in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences,

unreasonable conclusions, or arguments." <u>Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s,</u> <u>LLP</u>, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Id.</u>, at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." <u>Iqbal</u>, 129 S. Ct. at 1950.  While a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, <u>see</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level," <u>Twombly</u>, 550 U.S. at 555.

## V.    Discussion

### 1.    Dismissal of Plaintiffs' Claims Against the Sheriff and the County.

#### A.    Polk County

As plaintiffs make clear in their eleventh claim, they believe that Polk County is ultimately responsible for the alleged violations of the United States Constitution

and state law by the deputies employed by Defendant Abril.

A county may only be held liable for acts over which the county has final policymaking authority. City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988). Whether or not a county has final policymaking authority in a specific area is a question of state law. Id. In North Carolina, the Office of Sheriff is distinct from the Board of County Commissioners, because the sheriff is elected by the people, not employed by the county. Little v. Smith, 114 F.Supp.2d 437, 446 (W.D.N.C. 2000); N.C.Gen.Stat. § 162-1. It is the sheriff and not the county that has final policymaking authority over the personnel decisions in his or her office. Clark v. Burke County, 117 N.C.App. 85, 89 (1994). Indeed, N.C.Gen.Stat. § 153A-103 provides that the sheriff "has the exclusive right to hire, discharge, and supervise the employees in his office," and this authority may not be delegated to another person or entity, N.C.Gen.Stat. § 162-24, which would include a county's Board of Commissioners.

Thus, plaintiffs can state no claim in this action against Polk County as it lacks any policymaking authority over the Office of Sheriff as a matter of law. The undersigned will recommend that all claims asserted against such defendant be dismissed.

### B. Polk County Sheriff's Department

Like the Defendant County, the Defendant Polk County Sheriff's Department

is not properly a defendant in this action, albeit for a different, more basic reason: it is not an entity capable of being sued.

The district court in <u>Hughes v. Bedsole</u>, 913 F.Supp. 420, 426 (E.D.N.C.1994), held that the "Cumberland County Sheriff's Department" is not a legal entity under Section 1983 capable of being sued. <u>Id.</u> The reported federal case law in North Carolina is consistent with <u>Hughes</u>. <u>See</u> <u>Parker v. Bladen County</u>, 583 F.Supp.2d 736, 740 (E.D.N.C. 2008); <u>Efird v. Riley</u>, 342 F.Supp.2d 413, 419-20 (M.D.N.C. 2004). <u>See also</u> <u>Moore v. City of Asheville</u>, 290 F.Supp.2d 664, 673 (W.D.N.C.2003), *aff'd*, 396 F.3d 385 (4th Cir.2005) (dismissing claims against city police department for lack of capacity).

Directly addressing the ability of sheriff's departments to sue and be sued, the logic of Honorable James C. Dever III, United States District Judge, in <u>Parker</u>, <u>supra</u>, is compelling:

> Defendants also seek to dismiss the claims against the Bladen County Sheriff's Department, and plaintiff does not appear to contest dismissal as to this defendant. "State law dictates whether a [state] governmental agency has the capacity to be sued in federal court." *Efird v. Riley*, 342 F.Supp.2d 413, 419-20 (M.D.N.C.2004) (*citing Avery v. Burke*, 660 F.2d 111, 113-14 (4th Cir.1981)). For example, N.C. Gen.Stat. § 153A-11 acknowledges that a county is a legal entity which may be sued. However, there is no corresponding statute authorizing suit against a North Carolina county's sheriff's department. Accordingly, the Bladen County Sheriff's Department lacks legal capacity to be sued. *See Efird*, 342 F.Supp.2d at 420 (dismissing claims against county sheriff's department for lack of capacity); *see also Moore v. City of Asheville*, 290

> F.Supp.2d 664, 673 (W.D.N.C. 2003), *aff'd*, 396 F.3d 385 (4th Cir.2005) (dismissing claims against city police department for lack of capacity). Defendants' motion to dismiss all claims against the Bladen County Sheriff's Department is granted

Parker, supra, at 740. The considerations used by the court in Parker to conclude that sheriff departments are not legal entities are nearly identical to the considerations that the district court employed in this district to find that a city police department was not a legal entity. In Moore, supra, Honorable Lacy H. Thornburg, United States District Judge (now retired), concluded that the City of Asheville Police Department was not an entity capable of being sued under North Carolina law.

The undersigned believes that the overwhelming case law originating in its sister federal courts in North Carolina is correct and that North Carolina sheriff's departments are not legal entities under North Carolina law capable of being sued. The undersigned will respectfully recommend that all claims asserted herein against the Polk County Sheriff's Department be dismissed as such defendant is not an entity capable of being sued. See also Jackson v. Bulloch County Jail, 2008 WL 2437421 (S.D.Ga. 2008); Lane v. El Paso County Sheriff, 2007 WL 2221155, 1 (D.Colo. 2007)(The sheriff's department is not a separate entity from El Paso County and, therefore, is not a person under 42 U.S.C. § 1983); Lovelace v. DeKalb Cent. Prob., 144 F. App'x 793, 795 (11th Cir.2005)(county police department not a legal entity subject to suit under § 1983); Miller v. Benton County Jail, 2006 WL 2711482, at *1

(W.D.Ark. Sept.11, 2006) (county jail not a legal entity subject to suit); <u>Lesikar v. Med. Staff</u>, 2002 WL 441404, at *4 (N.D.Tex. Mar.19, 2002) (§ 1983 plaintiff may not sue detention center or sheriff's department, which lack a distinct legal existence); <u>Agnew v. St. Joseph County Jail</u>, 1996 WL 534928, at *1 (N.D.Ind. Aug.14, 1996); <u>Powell v. Cook County Jail</u>, 814 F.Supp. 757, 758 (N.D.Ill.1993) (jail not a person or legal entity).

**2.** **Dismissal of Plaintiffs' First, Second, and Third Claims**

    **A.** **Asserted Against Defendants Abril, Prince, and Carswell in their Official Capacities**

While plaintiffs have sued Defendants Abril, Prince, and Carswell in their respective official and individual capacities, they make no allegations in the first through third claims for relief that these defendants violated any policies or customs when they allegedly inflicted injury on plaintiffs. <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 690-91. Plaintiffs argue in their response, as follows:

> Defendants assert that Plaintiffs have not identified any municipal policy or custom that caused their injuries. However, failure to plead the precise terminology used in § 1983 litigation does not warrant dismissal, because the existence of a municipal policy or custom as to Plaintiffs' claims can be inferred from the facts alleged, specifically that the Sheriff, the final policy maker at the Sheriff's Department, and his deputies who directed the actions of other law enforcement officers, established the policy that led to the constitutional violations.

Response (#22), at 3 (citation omitted). This argument is deficient for the reasons

discussed above as to the requirements under Rule 12(b)(6).  To the extent plaintiffs are arguing that the court could infer "the existence of a municipal policy or custom . . . from the facts alleged," plaintiffs fail to inform the court of the facts from which such policy should be inferred.  Indeed, the court could not rationally construe the pleadings to support any inference of a policy by the Sheriff of Polk County to encourage his deputies to violate and run roughshod over the civil rights of the residents of the county.  Such a policy would not only expose the sheriff and his deputies to suit, it would do little to win a sheriff the support of those same residents in future elections.

Two elements are required to properly plead and later establish employer or official capacity liability under Monell: (1) whether plaintiffs' harm was caused by a constitutional violation; and (2) if so, whether the employer is responsible for that violation.  In Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987), *cert. denied*, 484 U.S. 1027 (1988), any employer liability must be carefully controlled at three critical points: (1) identifying the specific policy or custom, (2) fairly attributing the policy and fault for its creation to the public employer, and (3) finding a necessary affirmative link between identified policy or custom and specific violation.  Id., at 1389.  Where the alleged constitutional deprivation is not an official act of the municipal employer, the only recovery lies against the officer in his or her individual

capacity. <u>Hughes v. Blankenship</u>, 672 F.2d 403, 405-06 (4th Cir. 1982); <u>Burt v. Abel</u>, 585 F.2d 613, 617 n.9 (4th Cir. 1978).

As plaintiffs fail to identify any municipal policy or custom that caused their injuries, the first, second, and third claims for relief do not state a claim against Defendants Abril, Prince, and Carswell in their respective official capacities. <u>Board of Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388 (1997); <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 479-81, 106 S.Ct. 1292, 1298-1299 (1986). The undersigned will recommend that such claims against such defendants sued in their official capacities be dismissed.

> **B.      Asserted Against Defendants Abril, Prince, and Carswell in their Individual Capacities**

Review of the first, second, and third claims reveals that plaintiff has failed make any factual allegations as to Defendants Prince and Abril in the individual capacities. The same claims fair only slightly better as to Defendant Carswell inasmuch as plaintiffs have alleged in the first claim that he actually seized Plaintiff Huntley. Plaintiffs well summarize defendants' argument, as follows:

> The essence of this attack on the complaint is that Plaintiffs have not alleged specifically what each of the Defendants did to effectuate the arrests, detentions and searches of the individual Plaintiffs, other than what Defendant Carswell did to Plaintiff Huntley.

Response (#22), at 4. Plaintiffs' explanation as to why they cannot overcome such

challenge, while candid, is unavailing under current case law:

> However, other than Huntley recognizing Carswell, none of the other Plaintiffs knew which Defendants were violating their rights. That information will only become available to Plaintiffs through discovery.

Id. Where as here plaintiffs are contending that they were subjected to unconstitutional arrests, detentions, and searches, they are obligated under Iqbal to provide in the charging instrument - - the Complaint - - the facts which have led them to such conclusion.   Stating that "none of the other Plaintiffs knew which Defendants were violating their rights" does not satisfy the Rule 12(b)(6) inquiry; rather, the Supreme Court made it clear in Iqbal that claims must be supported by plausible contentions, making reliance on facts not known but that could *possibly* be found in discovery insufficient to support a claim against a specific person.   Where  a plaintiff knows of the alleged harm, but is not then capable of determining who harmed him, the law is clear as to the remedy:

> A plaintiff may name "John Doe" as a defendant when the identity of a defendant is unknown. *Boyd v. Gullet*, 64 F.R.D. 169 (D.Md.1974). However, a district court is not required "to wait indefinitely" for the plaintiff to provide the defendant's true identity to the Court. *Glaros v. Perse*, 628 F.2d 679, 685 (1st Cir.1980). The plaintiff has had sufficient time to identify all the defendants in this action. Moreover, beyond adding Jane/John Doe to the caption of his case, he has provided no information as to how or when Jane/John Doe violated his constitutional rights. Accordingly, the complaint against Jane/John Doe should be dismissed.

Edwards v. Proctor, 2009 WL 87011, * 5 (N.D.W.Va. Jan. 12, 2009).  As alluded to

by the court in <u>Edwards</u>, even naming a John Doe defendant will not be enough as a plaintiff will have to conduct discovery to determine who such defendants are and then satisfy the relation-back requirements of Rule 15(c) to amend the name of the party. The correct procedure is not, as made clear under <u>Iqbal</u>, to make scattergun claims against officers based on a mere possibility that they could have been involved in the alleged wrongful conduct.

The undersigned must, therefore, recommend that the first, second, and third claims against Defendants Abril and Prince in their individual capacities be dismissed. As to Defendant Carswell in his individual capacity, the undersigned will recommend that the first, second, and third claims be dismissed, except that the first claim not be dismissed against him only as to claims made by Plaintiff Huntley as such claim does satisfy the requirements of Rule 12(b)(6).

### C. Other Grounds for Dismissal as to the First, Second, and Third Claims

#### i. *Respondeat Superior*

The county defendants have argued, in the alternative or in addition, that plaintiffs have failed to allege that Defendant Abril, the Sheriff, had actual or constructive knowledge the Defendants Prince and Carswell, his deputies, were engaged in conduct that posed a pervasive and unreasonable risk of constitutional

injury, that Defendant Abril's response was inadequate, and that there was a causal link between his inaction and the alleged injury to plaintiffs. Slakan v. Porter, 737 F.2d 368, 372-3 (4th Cir. 1984). The doctrine of *respondeat superior* is generally inapplicable to Section 1983 suits. Monell, 436 U.S. at 694 Plaintiffs do not respond to such argument. Thus, any claims against Defendant Abril for acts committed allegedly committed by his deputies must be dismissed.

ii. **Plaintiff Marlowe Fails to State a Claim as to the First Cause of Action Because He Admits Probable Cause Supported His Arrest**

Plaintiff Marlowe alleges in his Complaint that he maintained an indoor marijuana grow operation in his residence, which was discovered by law enforcement on the night in question. Complaint, ¶¶ 45-46. In response, plaintiffs argue as follows:

> Defendants argue further that Plaintiff Marlowe has no claim for false arrest because he was in fact growing marijuana. While the exclusionary rule may not bar the introduction of evidence of his garden, Mr. Marlowe's rights were still violated by the illegal actions in procuring the search warrant. The arrest was based on false premises, because the warrant was based on false premises. Nothing the officers found after the false arrest can be used to justify the arrest that was false in the first place.

Response (#22), at 5. Plaintiff cites no case authority in support of such argument.

Whether the search warrant that led to the discovery of Defendant Marlowe's indoor grow was later determined to be defective is irrelevant to a civil action for

unlawful seize in violation of the Fourth Amendment (had the Fourth Amendment

actually been pled). The Supreme Court has explained the underlying constitutional

consideration:

> It is not disputed that the Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense. *Adams v. Williams*, 407 U.S. 143, 148-149, 92 S.Ct. 1921, 1924-1925, 32 L.Ed.2d 612 (1972); *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest. <u>We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest.</u> *See Gerstein v. Pugh*, 420 U.S. 103, 119-123, 95 S.Ct. 854, 865-867, 43 L.Ed.2d 54 (1975); *Brinegar v. United States*, 338 U.S. 160, 174-176, 69 S.Ct. 1302, 1310-1311, 93 L.Ed. 1879 (1949).
>
> When the officer arrested respondent, he had abundant probable cause to believe that respondent's conduct violated the terms of the ordinance.

* * *

<u>Michigan v. DeFillippo</u>, 443 U.S. 31, 36 (1979) (emphasis added). Thus, Plaintiff

Marlowe's First Claim for arrest in violation of his constitutional rights is not

supported by plausible facts as the facts allege clearly show that no relief could be

afforded this plaintiff under current case law. Plaintiffs' responsive argument is also

contrary to law that has been established for at least 30 years, if not longer. The court

will recommend that this claim also be dismissed.

### iii.    Second Claim is Barred as a Matter of Law

The second claim is also barred as a matter of law.  In their second claim, plaintiffs contend that they were unlawfully detained and confined by defendants. They allege that such restraint violated their Fifth and Fourteenth Amendment rights. Complaint, ¶ 58.

The Due Process Clause of the Fifth Amendment has no application to the states, but is instead a restraint on actions of the federal government.  <u>Winfield v. Bass</u>, 106 F.3d 525, 530 n.2 (4th Cir. 1997).  Thus, no cause of action can be stated against state actors under the Fifth Amendment.

Plaintiffs have also relied on the due process provisions of the Fourteenth Amendment, which does apply to the states.  However, it is inapplicable to claims of pretrial seizure, restraint, and confinement.  Section 1983 "is not itself a source of substantive rights," but provides litigants with a procedure that allows them to vindicate "federal rights elsewhere conferred."  <u>Baker v. McCollan</u>, 443 U.S. 137, 144, n.3 (1979).  In considering a Section 1983 claim, the court must first identify the specific constitutional right purportedly infringed. <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989).  The catchall "due-process" analysis afforded under the Fourteenth Amendment is inapplicable where, as here, a more specific, textual amendment applies to the specific constitutional harm asserted.  <u>Henderson Amusement, Inc. v. Good</u>, 172 F.Supp.2d 751, f.n. 4 (W.D.N.C. 2001), <u>aff'd</u>, 59 Fed.Appx. 536 (4th Cir.

2003), *abrogation on different grounds recognized*, <u>Gantt v. Whitaker</u>, 203 F.Supp.2d 503 (M.D.N.C. 2002) .

In this case, the right to be free from arrest and the detention that comes with arrest arises exclusively from the Fourth Amendment. <u>Brooks v. City of Winston Salem</u>, 85 F.3d 178, 184 (4th Cir. 1996). In response, plaintiffs argue as follows:

> Defendants next argue that the detention and confinement claim should be dismissed because Plaintiffs refer to the Fifth and Fourteenth Amendments, rather than the Fourth Amendment. If the Court agrees with this argument, <u>which is pure form over substance</u>, Plaintiffs respectfully request that they be allowed to amend the complaint to allege the correct Amendment.

Response (#22), at 5 (emphasis added). Plaintiffs' argument that identifying the specific constitutional right infringed is somehow a distinction without meaning is wholly contrary to the teachings of the Supreme Court in <u>Graham</u>, <u>supra</u>.

Finally, plaintiffs' request that it be allowed to amend, contained in a responsive brief and not set forth as a separate motion, is without moment. Local Civil Rule 7.1(C)(2) provides as follows:

> **(2) Motions Not to Be Included in Responsive Briefs.** Motions shall not be included in responsive briefs. Each motion should be set forth as a separately filed pleading.

L.Cv.R. 7.1(C)(2). Further compounding the problem is plaintiffs' failure to unilaterally amend the defective Complaint after the Partial Motion to Dismiss was

filed,[3] which is specifically allowed by Rule 15, Federal Rules of Civil Procedure:

> **(a) Amendments Before Trial.**
> **(1) Amending as a Matter of Course.**
> A party may amend its pleading once as a matter of course within:
>
> &#42; &#42; &#42;
>
> > (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed.R.Civ.P. 15(a)(1)(B).

The second claim for relief is, therefore, barred in its entirety because the Fifth and Fourteenth Amendments do not apply to this case. The undersigned will, therefore, recommend dismissal of the second and third claims on such ground.

### iv.    Implausibility of the Third Claim

In their third claim, plaintiffs contend that they were subjected to an unreasonable search because it was based on a warrant that was deficient because it was obtained by use of false statements. Complaint, ¶ 48. To plausibly be able to prevail on this claim, plaintiff must allege facts that if later proved could show that the *defendants* deliberately or with a reckless disregard for the truth made material false statements in the search warrant affidavit. <u>Franks v. Delaware</u>, 438 U.S. 154, 171

---

[3]     Indeed, plaintiffs could have well resolved other issues raised in the Partial Motion to Dismiss by carefully amending its Complaint, including the naming of John Doe defendants. By not taking unilateral action, plaintiffs have necessitated the court taking up the merits of the motion.

(1978). What will constitute plausible facts as to "reckless disregard" can be determined by reviewing applicable law, as follows:

> "Reckless disregard" can be established by evidence that an officer acted "with a high degree of awareness of [a statement's] probable falsity," that is, "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported."

Miller v. Prince George's County, Maryland, 475 F.3d 621, 627 (4th Cir. 2007)(citations omitted).

Reading all of the allegations in a light most favorable to plaintiffs, they do allege that Defendant Prince executed an affidavit based on information he received from Defendant Shehan, his informant. Complaint, ¶ 43. Plaintiffs do not allege, however, that Defendant Prince made false statements to the Superior Court judge who issued the warrant,[4] but that the informant provided Defendant Prince with inaccurate information. Under Miller, plaintiffs must allege plausible facts to the effect that Defendant Prince was aware, or should have been aware, of the falsity of Defendant Shehan's statement. While a reasonable inference may arise as to why Defendant Shehan would provide false information to law enforcement, plaintiffs provide no basis for concluding that Defendant Prince knew, or should have known,

---

[4] Defendants state that it was a magistrate that issued the warrant, but the face of the warrant as well as the affidavit reveals that it was considered by a Superior Court judge. The signature is, however, illegible.

of the alleged falsity of the Defendant Shehan's statement.

Instead, it appears that plaintiff have relied on the statements made by a Superior Court judge who latter held that the search warrant was invalid.

On June 23, 2008, a hearing was held on Marlowe's motion to suppress in the Superior Court of Polk County. At the hearing, Jennifer Bailey, Steve Marlowe, Jean Marlowe (Steve's former wife) Charles Grady Shehan, Matt Prince, and Trent Carswell testified. Judge Marlene Hyatt found that the Shehan affidavit was false, and that the Sheriff's Department had procured the search warrant using false statements, either knowingly or with "reckless disregard for the truth."

Complaint, ¶ 48.   Judge Hyatt's purported determination that "the Sheriff's Department had procured the search warrant using false statements, either knowingly or with 'reckless disregard for the truth'" while certainly powerful, is not probative under Miller, as plaintiff must allege plausible facts "that an officer acted 'with a high degree of awareness of [a statement's] probable falsity.'"   Miller, supra.   Judge Hyatt's decision is not a fact, but a legal conclusion based on facts that were presented to her.  It is not binding on these defendants under res judicata as they were not parties to the criminal action.  What is needed here, but not alleged, are the facts that were presented  at the suppression hearing to Judge Hyatt, which convinced her that Defendant Prince knew the facts he was presenting were false.

Such claim fails under the first requirement of Franks; thus, the undersigned need not address materiality.  The undersigned will, therefore, recommend that the

third claim be dismissed.

## v.    Qualified Immunity

Finally, at to the first three claims, Defendants Abril, Prince, and Carswell contend that they are entitled to qualified immunity from monetary damages in their official capacities because their actions did not violate clearly established law. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808  (2009).  Again without citing any legal authority, plaintiffs make the following responsive argument:

> This argument [for qualified immunity] is also premature, pending discovery, but Plaintiffs note that the right to not have a falsely procured search warrant executed against you with extreme violence could not be more clearly established, and the line that these Defendants transgressed could not be brighter.

Response (#22), at 6.  Plaintiffs unsupported argument is again without merit.

Public officials are free from liability for monetary damages if they can plead and prove that their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 815-16 (1982).  Despite plaintiffs' argument to the contrary, in Mitchell v. Forsyth, 472 U.S. 511 (1985), the Supreme Court held that qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Id., at 526.  Qualified immunity is a question of law.  Adams v. St. Lucie

County Sheriff's Department, 962 F.2d 1563, 1566-67 (11th Cir. 1992).

There is a two-prong test for resolving qualified immunity claims. A court "must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right." Pearson v. Callahan, 129 S. Ct. at 815-16.[5] Also, "the court must decide whether the right at issue was 'clearly established' at the time of [the] alleged misconduct." Id., at 816 (citation omitted).  Significantly, the Supreme Court held that courts are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in [a] particular case." Id., at 818.

In this case, defendants have proceeded directly to the second prong, arguing that they are entitled to qualified immunity because their actions did not violate clearly established law.  First, defendants have pointed to current case law which provides that officers executing a search warrant may take reasonable action to secure the premises, including detaining occupants in handcuffs, and to ensure their own safety and the officers of the search.  Muehler v. Mena, 544 U.S. 93, 98-100 (2005).  Further,

> [w]hen officers execute a valid warrant and act in a reasonable manner
> to protect themselves from harm, however, the Fourth Amendment is not

---

[5]    While the *United States Reports* book and page number was available and has herein been cited, such reporter's pagination was not available through *Westlaw* at the time this recommendation was written.

violated.

Los Angeles County, County, California v. Rettele, 550 U.S. 609, 615-616 (2007).

For the purposes of civil litigation, the validity of the warrant is not viewed in hindsight, but from the perspective of an objectively reasonable officer. In this case, there have been absolutely no plausible facts alleged as to why any officer who either secured the warrant or executed it had reason to believe that such warrant was not valid and authorized the search. While only persuasive in the Fourth Circuit, the Court of Appeals for the Ninth Circuit held, as follows:

> In civil rights actions, qualified immunity turns on the objective unreasonableness of the law enforcement officer's conduct in light of clearly established law. The state court, ruling in the context of a motion to suppress in Lombardi's criminal proceeding, had no occasion to make this determination.

Lombardi v. City of El Cajon, 117 F.3d 1117, 1121 (9th Cir. 1997).

The undersigned will, therefore, recommend that Defendants Abril, Prince, and Carswell be afforded qualified immunity from monetary damages in their official capacities as to the first through third claims because their actions did not violate clearly established law.

### 3. Fourth Claim for Relief

In their fourth claim for relief, the plaintiffs contend that their rights under the Fifth and Fourteenth Amendments were violated because of an "unlawful and

malicious conspiracy of Defendants" in violation of Sections 1983 and 1985. To establish a civil conspiracy, a plaintiff must allege that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir.1996). In response, plaintiffs argue as follows:

> the facts alleged in complaint establish that a meeting of the minds occurred between and among the Defendants and Charles Grady Shehan to concoct a false affidavit and to use that affidavit to deceive the magistrate into issuing the false search warrant. The full extent of this conspiracy will be established during discovery . . . .

Plaintiffs' Response (#22), at 6. Plaintiffs' response is again deficient as it relies on an abrogated Rule 12(b)(6) standard and it fails to cite where in the Complaint the facts may be found. See L.Cv.R. 7.1(C) ("Factual contentions shall be supported as specifically as possible by citation to exhibit number and page.").

Despite plaintiffs' argument to the contrary, no where in their Complaint do plaintiffs allege any overt act in furtherance of the conspiracy. Indeed, a search of the entire Complaint does not reveal even the use of the term "overt act" much less the factual description of an overt act in furtherance of a conspiracy. Simply relying on information provided by a confidential informant - - regardless of whether he is later determined by a trial court to be unreliable - - does not create a Section 1985 conspiracy between state actors and the informant. To the extent plaintiffs are

attempting to allege a Section 1985 conspiracy between a private party and state actors, a private party acts under color of state law when he is engaged in a conspiracy with state officials to deprive another of federal rights. Tower v. Glover, 467 U.S. 914, 920 (1984). But to plead and later prove such a conspiracy, plaintiffs must show an agreement or a meeting of the minds to violate constitutional rights, and mere cooperation in an official investigation is insufficient to show conspiracy. John Hancock Mutual Life Ins. Co. v. Anderson, 1991 WL 99073 (4th Cir. July 15, 1991)[6](citing Fonda v. Gray, 707 F.2d 435, 438 (9th Cir. 1983)); see Melton v. Dermota, 1991 WL 147490 (4th Cir. Aug. 6, 1991)[7](providing information and pressing for criminal prosecution does not make an individual a state actor; citing Manax v. McNamara, 842 F.2d 808 (5th Cir. 1988)).   Thus, no Section 1985 conspiracy has been alleged.

Finally, while neither the Complaint nor the motions make the distinction, the court has also considered whether a Section 1983 civil conspiracy between state actors has been alleged.  A civil conspiracy claim under Section 1983 may be stated by alleging  plausible  facts  of  acquiescence  by  fellow  officers  who  witnessed

---

[6]      Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

[7]      Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

unconstitutional conduct.  Hafner v. Brown, 983 F.2d 570 (4th Cir. 1992).  The Hafner court addressed the elements of a civil conspiracy claim under Section 1983.  The instruction which the Hafner court upheld provided that "[t]he critical element is whether there was a meeting of the minds to accomplish the unlawful act." Id., at 577. While plaintiffs state in a conclusory fashion that defendants engaged in a "concerted unlawful and malicious conspiracy," there simply are no plausible factual assertions that defendant law enforcement officers  agreed to accomplish an unlawful act.

The undersigned will recommend that the fourth claim be dismissed.

### 4.    Fifth Claim for Relief

Defendants next seek dismissal of plaintiffs' fifth claim for relief, in which plaintiffs assert that their Fifth and Fourteenth Amendment rights were violated when Defendant Abril refused or neglected to prevent his deputies from violating plaintiffs' constitutional rights.   Again, there are  no supporting facts of even a general nature to suggest any specific deficiencies in training, or any allegations of a developed practice or custom of comparable conduct which might be attributed to a municipal policymaking authority. A single act by officers in the field cannot establish the existence of such a policy.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-824 (1985).   As the deficiencies in the Complaint concerning plaintiffs' attempts at establishing supervisory liability have already been discussed at length, the

undersigned will recommend that this claim also be dismissed as plaintiffs have failed to state a cause of action.

### 5. Supplemental State Law Claims

### A. Official Capacity

Defendants Abril, Carswell, and Prince have asserted that any supplemental state law claims asserted against them in their official capacities must be dismissed because plaintiffs have failed to allege waiver of sovereign immunity through purchase of liability insurance. In response, plaintiffs argue as follows:

> Plaintiffs would point out that their counsel has been communicating with counsel for the Defendants, whom Plaintiffs' counsel is aware has been hired by Defendants' insurance company. Accordingly, Plaintiffs respectfully request leave to amend the complaint to add in the allegation, which Defendants must acknowledge is true, that they have waived sovereign immunity by the purchase of insurance.

Response (#22), at 7. Again, this response is deficient as plaintiffs failed to unilaterally amend the Complaint when they were informed of such deficiency and have failed to file a motion to amend, as discussed in greater detail earlier. Thus, the Complaint continues to suffer from what is a fatal deficiency for official capacity torts under state law.

> If a plaintiff does not allege a waiver of immunity by the purchase of insurance, the plaintiff has failed to state a claim against the governmental unit.

Reid v. Town of Madison, 137 N.C.App. 168, 170 (2000). Inasmuch as plaintiffs

have failed to avail themselves of the unilateral ability to amend under Rule 15(a) and have further failed to make an appropriate motion to amend, the undersigned must recommend that such claims be dismissed as failure to allege waiver through purchase of insurance is fatal to tort claims against public officials sued in their official capacities.

### B.    Individual Capacity

The only factual allegation against Defendants Abril, Carswell, or Prince concerns alleged conduct on the part of Defendant Carswell against Defendant Huntley that could amount to the state tort of assault.

> [A] civil action for damages for assault ... is available at common law against one who, for the accomplishment of a legitimate purpose, such as justifiable arrest, uses force which is excessive under the given circumstances.

Thomas v. Sellers, 142 N.C.App. 310, 315 (2001)(citation and corresponding quotation marks omitted).  The undersigned will, therefore, recommend that with such exception, the remainder of the supplemental claims against these defendants be dismissed.

### RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that Polk County's, Polk County Sheriff's Department's, Matt Prince's, Trent Carswell's, and Chris Abril's Motion to Dismiss Complaint (#21) be **ALLOWED** as follows as to the

moving defendants:

(1)     the claims for relief against Polk County and the Polk County Sheriff's Department be **DISMISSED**;

(2)     the first (Section 1983 false arrest claim), second (Section 1983 detention and confinement claim), and third (Section 1983 unreasonable search and seizure claim) claims for relief against Defendants Abril, Prince, and Carswell in their official capacities be **DISMISSED**;

(3)     the first (Section 1983 false arrest claim) claim for relief against Defendants Abril and Prince in their individual capacities, and against Defendant Carswell in his individual capacity for all plaintiffs except Huntley be **DISMISSED**;

(4)     the second (Section 1983 detention and confinement claim), and third (Section 1983 unreasonable search and seizure claim) claims for relief against Defendants Abril, Prince, and Carswell, in their individual capacities be **DISMISSED**;

(5)     the fourth claim for relief (Section 1983 Conspiracy Claim) be **DISMISSED**;

(6)     the fifth claim for relief (Section 1983 Claim for Refusing or Neglecting to Prevent) be **DISMISSED**;

(7)     the sixth through tenth claims for relief (false arrest and imprisonment, assault, battery, intentional infliction of emotional distress, and property damage) against the Defendants in their official capacities be **DISMISSED;** and

(8)     the individual capacity claims against Defendant Abril in the sixth through tenth claims for relief, the individual capacity claims against Defendant Prince in the sixth, ninth, and tenth claims for relief, and the individual capacity claims against Defendants Carswell in the sixth through tenth claims for relief for all plaintiffs except Huntley be **DISMISSED**.

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S.

140 (1985), <u>reh'g</u> <u>denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d

91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).

Signed: March 4, 2011

Dennis L. Howell
United States Magistrate Judge